UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21900-CIV-ALTONAGA/Simonton

**DREW ESTATE HOLDING CO., LLC**,

    Plaintiff,

vs.

**FANTASIA DISTRIBUTION, INC.**,

    Defendant/
    Third-Party Plaintiff,

vs.

**STARBUZZ TOBACCO, INC.**,

    Third-Party Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Third-Party Defendant Starbuzz Tobacco, Inc.'s ("Starbuzz['s]") Motion to Dismiss Third Party Plaintiff's (Second) Amended Third Party Claims ("Motion to Dismiss") [ECF No. 101]; and Starbuzz's Motion to Strike Third Party Plaintiff's (Second) Amended Third Party Claims ("Motion to Strike") [ECF No. 102], both filed February 14, 2012. Plaintiff, Drew Estate Holding Company LLC ("Drew"), filed its Complaint [ECF No. 1] for trademark infringement and unfair competition under 15 U.S.C. Section 1125(a), against Defendant, Fantasia Distribution, Inc. ("Fantasia"), on May 25, 2011. Fantasia responded on September 27, 2011, with third-party claims against Starbuzz intermingled with counterclaims against Drew. (*See* [ECF No. 53]). The Court dismissed all counterclaims and third-party claims in its December 5, 2011 Order. (*See* [ECF No. 79]). On December 8, 2011,

Fantasia filed amended counterclaims and third-party claims [ECF No. 82]. In a January 24, 2012 Order, the Court dismissed the amended third-party claims against Starbuzz. (*See* [ECF No. 98]). The Court found that Count I, alleging unfair competition and trademark infringement with respect to Starbuzz's Acid mark, failed to state a claim, as Fantasia could not plead facts demonstrating the priority of its mark over the Acid mark in light of uncontested exhibits showing the dates of registration of the respective marks. (*See id.* 6–7). The Court further found that Count II, for cancellation of Starbuzz's Blue Surfer mark, failed to plead fraud with the requisite specificity. (*See id.* 11–12). The Court granted Fantasia an opportunity to file a second amended third-party complaint.

Fantasia accordingly filed its second amended third-party complaint ("SATPC") [ECF No. 99] on January 31, 2012, again alleging two claims against Starbuzz — Count I for unfair competition and trademark infringement as to the ACID mark, and Count II for cancellation of various trademark registrations. Starbuzz seeks to dismiss the claims against it pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Starbuzz further contends that Fantasia fails to plead fraud with specificity in Count II. Starbuzz alternatively seeks to strike portions of the claims against it pursuant to Federal Rule 12(f). The Court has carefully reviewed the Motions, the parties' written submissions, and applicable law.

## I. BACKGROUND[1]

Fantasia is a California corporation. (*See* SATPC ¶ 1). Drew is a Delaware corporation doing business in Florida. (*See id.* ¶ 2). Starbuzz is a California corporation doing business in California. (*See id.* ¶ 3). On April 4, 2011, Drew filed a "Statement of Use" at the United States Patent and Trademark Office ("USPTO") stating under oath that its mark, Registration No.

---

[1] The allegations in the SATPC are taken as true.

2,440,808 ("Acid Mark") "is in use in commerce on or in connection with **all** goods or services listed in the existing registration for this specific class: Cigars." (*Id.* ¶ 4) (emphasis in original). As of April 4, 2011, Drew was not using the Acid Mark in connection with hookah tobacco. (*See id.* ¶ 5). As of the filing of the SATPC on January 31, 2012, Drew was not using the Acid Mark in connection with hookah tobacco. (*See id.* ¶¶ 6–7). As of January 31, 2012, Drew was not aware of a single instance of Fantasia marketing a cigar under the name Surfer on Acid. (*See id.* ¶ 8). As of January 31, 2012, Drew was aware Fantasia was the senior user of the mark Surfer on Acid ("Surfer on Acid Mark") as it relates to hookah tobacco. (*See id.* ¶ 9).

Drew and Starbuzz cooperated to market a hookah tobacco product under the Acid Mark. (*See id.* ¶ 11). Fantasia owns the rights to the Surfer on Acid Mark, U.S. Trademark Application No. 85/206,113. (*See id.* ¶ 12). Fantasia has used the Surfer on Acid Mark for goods and services including hookah tobacco, molasses tobacco, smoking tobacco, and tobacco, since November 24, 2009. (*See id.* ¶ 13). As of November 24, 2009, neither Drew nor Starbuzz sold any hookah tobacco or molasses tobacco under the Acid Mark. (*See id.* ¶¶ 14, 17–18). As of November 24 2009, Registration No. 2,440,808 related solely to the use of the Acid Mark in connection with cigars, not hookah or molasses tobacco. (*See id.* ¶¶ 15–16). As of November 24, 2009, Registration No. 3,687,647 related solely to the use of the mark Acid Cigars ("Acid Cigars Mark") in connection with cigars, tobacco, and related products. (*See id.* ¶ 19). Registration No. 3,687,647 did not relate to goods such as hookah or molasses tobacco. (*See id.* ¶ 20). As of January 31, 2012, neither Drew nor Starbuzz was using the Acid Cigars Mark in relation to hookah or molasses tobacco. (*See id.* ¶¶ 21–24).

Fantasia now alleges it is the senior user of the Surfer on Acid Mark, and its use of that mark has priority over the Acid Mark with respect to hookah and molasses tobacco. (*See id.* ¶¶

25–26). According to Fantasia, Drew and Starbuzz's Acid Mark is confusingly similar to Fantasia's Surfer on Acid Mark, and the use of the Acid Mark in connection with hookah tobacco is unfair competition and trademark infringement. (*See id.* ¶¶ 27–33).

Starbuzz filed U.S. Trademark Application No. 85/055,511 (now Registration No. 4,004,853) for the mark Blue Surfer ("Blue Surfer Mark") on June 5, 2010. (*See id.* ¶ 34). When Starbuzz filed the application, it was aware of Fantasia's use of the Surfer on Acid Mark for hookah products. (*See id.* ¶ 35). In the application, Starbuzz knowingly and falsely declared under oath that it used the Blue Surfer Mark as early as August 16, 2009. (*See id.* ¶ 36). On June 4, 2010, Wael Elhalwani ("Elhalwani") signed a declaration ("June 4 Declaration") on behalf of Starbuzz stating that statements made in the application were true. (*See id.* ¶ 37). Elhalwani stated in the June 4 Declaration that "[i]n International Class 034, the [Blue Surfer Mark] was first used at least as early as 08/16/2009, and first used in commerce at least as early as 8/16/2009, and is now in use in such commerce. (*Id.* ¶ 38). When Elhalwani signed the June 4 Declaration, he knew Starbuzz had not used the Blue Surfer Mark as early as August 16, 2009. (*See id.* ¶ 39). Elhalwani also indicated in the June 4 Declaration that Starbuzz was using the Blue Surfer Mark on a "Tobacco Substitute, Namely, Herbal Molasses," while knowing this was not true. (*Id.* ¶¶ 40–41).

Elhalwani signed identical false declarations in each of the corresponding U.S. Trademark Applications for the following Registration Numbers: 4,008,326; 4,007,454; 4,004,854; 3,999,504; 3,971,871; 3,971,676; 3,870,404; 3,870,401; 4,020,760; 3,975,030; 3,847,796; 3,838,818; 3,695,508; 3,695,500; 3,846,713; 3,924,277; 3,750,862; 3,750,861; 3,662,228; 3,695,438; 3,750,850; 3,668,010; 3,808,670; and 3,788,359 (collectively, the "Trademark Applications"). (*See id.* ¶ 42). In each of the Trademark Applications, Starbuzz

asserted the mark was being used on a tobacco substitute, namely herbal molasses, which was not the case. (*See id.* ¶¶ 43–44).  In each of the Trademark Applications, Elhalwani or another Starbuzz agent intentionally misled the USPTO in the accompanying signed declaration. (*See id.* ¶ 45).  In each of the Trademark Applications and the Blue Surfer Mark registration, Starbuzz intentionally and knowingly made false material statements to the USPTO to attempt to procure a trademark registration. (*See id.* ¶ 46).

As of June 4, 2010, Starbuzz was not using the Blue Surfer Mark in connection with herbal molasses; Starbuzz did not sell herbal molasses. (*See id.* ¶¶ 47–48).  As of August 16, 2009, Starbuzz was not using the Blue Surfer Mark in connection with goods or services. (*See id.* ¶ 49).

## II.  LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by

Case 1:11-cv-21900-CMA   Document 109   Entered on FLSD Docket 03/13/2012   Page 6 of 12

Case No. 11-21900-CIV-ALTONAGA/Simonton

factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations.").

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a pleading for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Federal Rule of Civil Procedure 9(b) requires that a plaintiff plead material misrepresentations or omissions with particularity. The particularity rule alerts defendants to their precise misconduct and protects defendants against baseless charges of fraudulent behavior. *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988). Finally, pursuant to Federal Rule 12(f), a party may move to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *Id.* 12(f).

### III.  ANALYSIS

Starbuzz moves to dismiss both claims in Fantasia's SATPC. As to the first claim for unfair competition and trademark infringement, Starbuzz contends Fantasia fails to allege sufficient facts establishing priority in the Surfer on Acid Mark. (*See* Mot. to Dismiss 1). Starbuzz argues the second claim for cancellation of the Trademark Applications fails to state a claim because Fantasia does not allege facts establishing its standing to challenge these registrations. (*See id.* 2). As to Registration No. 4,004,853 for the Blue Surfer Mark, according to Starbuzz, Fantasia fails to plead facts sufficient to state a claim for fraud on the USPTO. (*See id.*). The Court addresses each of Starbuzz's arguments in turn.

####   A.    Count I — Unfair Competition and Trademark Infringement

In the January 14, 2012 Order, the Court stated Fantasia must plead facts showing the priority of its Surfer on Acid Mark over Drew's Acid Mark; Fantasia could make such a showing

by demonstrating prior use. (*See* Jan. 14, 2012 Order 6 (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997))). The Court found that Fantasia's conclusory statement that it was "the senior user of the parties' marks as they relate to hookah tobacco" was insufficient where no facts were pleaded concerning how Fantasia was the senior user. (*Id.*). This was particularly true since Starbuzz provided uncontested copies of the relevant trademark registrations demonstrating that the "first use date" of Fantasia's Surfer on Acid Mark was November 24, 2009, and the "first use date" of Drew's Acid Mark was July 15, 1997. (*Id.* 7).

The allegations in the SATPC do not alter the Court's findings in the January 14, 2012 Order. Rather, Fantasia confirms that it has used the Surfer on Acid Mark since November 24, 2009. (*See* SATPC ¶ 13). Fantasia makes no allegations suggesting the Surfer on Acid Mark predates the Acid Mark in any way, which would be a difficult allegation to make given the documentary record and findings in the January 14, 2012 Order. The Court therefore does not disturb its earlier finding that the Acid Mark was in use prior to the Surfer on Acid Mark.

The SATPC alleges that as of November 24, 2009, Starbuzz and Drew were not using the Acid Mark or Acid Cigars Mark in connection with molasses or hookah tobacco, and that Fantasia was using the Surfer on Acid Mark for molasses tobacco, hookah tobacco, smoking tobacco, and tobacco. (*See id.* ¶¶ 13, 17–18, 21–22). Thus, Fantasia concludes that it "is the senior user of the SURFER ON ACID mark as it relates to at least hookah tobacco and molasses tobacco." (*Id.* ¶ 25). This conclusion, however, is belied by Fantasia's own allegations and exhibits.

Fantasia acknowledges that as of November 24, 2009, Starbuzz's Acid Cigar Mark was being used in connection with "cigars, *tobacco and related products*." (*Id.* ¶ 19) (emphasis

7

added). The Acid Mark was being used "in connection with cigars" as of November 24, 2009. (*Id.* ¶ 15). Starbuzz cites the Eleventh Circuit decision in *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188 (11th Cir. 2001), for the proposition that as the undisputed senior user of its mark at least concerning cigars, it may enjoin a junior user in *related* products or services. (*See* Mot. to Dismiss 6). To prevail on a trademark infringement claim, a plaintiff must demonstrate: (1) plaintiff's mark has priority; (2) defendant used plaintiff's mark in commerce; and (3) defendant's mark is likely to cause consumer confusion. *See Lone Star*, 122 F.3d at 1382. The "likelihood of confusion" portion of this test is the relevant inquiry here. *Planetary Motion*, 2561 F.3d at 1200–01. Under this inquiry, a court must examine seven factors, including the similarities of the marks, and the similarity of the products the marks represent. *See id.* at 1200 n.22. As these factors imply,

> [t]he scope of protection enjoyed by a trademark owner is not restricted to the owner's original use. The 'natural expansion' doctrine is applied to determine the proper scope of protection where a mark owner's previous use differs from its current use, and the junior use intervenes. Under this doctrine, the first trademark owner's rights are limited to goods on which the mark has already been used *or that lie within the realm of natural expansion*; "this appears to be no more than a specific application of the familiar 'related goods' test."

*Id.* at 1201 (emphasis added) (quoting 4 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 24:20 (4th ed. 2011)). Thus the relevant question is whether hookah and molasses tobacco could be considered as within the scope of natural expansion of the protection of Starbuzz's Acid Mark and Acid Cigar Mark.

The test of the scope of protection of a mark is the "source or sponsorship" test. *Id.* Under this test, the mark owner has "protection against use of its mark on any product or service which would reasonably be thought by the buying public to come from the same source, or

thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Id.* (quoting MCCARTHY, *supra* § 24:6). "The public perception in this regard is determined at the time the junior user first used the mark on the product or service to which the allegedly infringing mark is affixed." *Id.* (citing *Carnival Brand Seafood Co. v. Carnival Brands, Inc.*, 187 F.3d 1307, 1312 (11th Cir. 1999)).

Here, the Court finds it highly relevant that Fantasia's application for the Surfer on Acid Mark noted that the mark would be used in connection with International Class 034, for "Hookah tobacco; Molasses tobacco; Smoking tobacco; Tobacco." (Surfer on Acid Application [ECF No. 99-2]). There is an obvious, common sense overlap between this list of goods, which includes the word "tobacco" without qualification, and the goods expressly covered by the Starbuzz marks in question, namely cigars and tobacco products under the Acid Cigar Mark, and cigars under the Acid Mark. (*See* SATPC ¶¶ 15, 19). The Court finds the goods covered by the Surfer on Acid Mark to be sufficiently related to be within the scope of protection of the Acid Mark and Acid Cigar Mark, which Fantasia does not dispute to be the senior marks. Fantasia's attempt here to carve out an exception for hookah and molasses tobacco as being unrelated to the other tobacco products in question is unavailing.

In its Response [ECF No. 106], Fantasia makes the meritless arguments that Starbuzz misstates the pleading requirements, and that Fantasia need only show priority in the Surfer on Acid Mark, not the Acid or Acid Cigar Mark. These arguments are unavailing. Starbuzz correctly states the requirements, and Fantasia must show its mark has priority *over* Starbuzz's marks, which Fantasia has not done. The Court therefore grants Starbuzz's motion to dismiss Count I of the SATPC.

### B. Count II — Cancellation of Starbuzz's U.S. Trademark Registrations

#### 1. Standing — the 25 Trademark Applications

Starbuzz first contends, pursuant to Federal Rule 12(b)(1), that Fantasia lacks standing to seek cancellation of the 25 Trademark Applications in Count II. (*See* Mot. to Dismiss 8). According to Starbuzz, Fantasia has alleged no "injury in fact," a constitutional requirement for standing and jurisdiction in this Court. (*Id.* 8–9 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992))). Starbuzz asserts Fantasia has not alleged it is currently using any of the contested marks, or any similar marks; it also has not alleged in good faith that it may use any of them. (*See id.* 9). Similarly, Fantasia must allege that it is likely to be damaged if a mark is not cancelled to assert standing under the Lanham Act, which Starbuzz argues Fantasia has not done. (*See id.* (citing, *inter alia*, *Coach House Restaurant, Inc. v. Coach and Six Restaurants, Inc.*, 934 F.2d 1551, 1557 (11th Cir. 1991))). Indeed, a party challenging the registration of a mark "must have a 'real interest' in the proceedings and must have a 'reasonable' basis for his belief of damage." *Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999).

In the SATPC, Fantasia alleges that Elhalwani signed "false Declarations" in each of the Trademark Applications in question, and that in each of the Trademark Applications "Starbuzz asserted that the mark was being used on a tobacco substitute, namely herbal molasses," which in fact was not true. (SATPC ¶¶ 42–44). The Court agrees with Starbuzz that no facts are alleged demonstrating any interest on the part of Fantasia in these marks; there are no allegations as to how the Trademark Applications affected Fantasia's marks in the least. Fantasia alleges no facts demonstrating that it has standing to challenge the marks in question. In its Response Fantasia cites the standard, but still gives no reason why it would be damaged by the Trademark Applications. The Court therefore grants the motion to dismiss Count II with respect to the 25

Trademark Applications referenced in SATPC paragraph 42. The Court does not address Starbuzz's argument that Fantasia fails to plead fraud with specificity as to these 25 marks. The Court further declines to address the Motion to Strike, which seeks to strike the portions of the SATPC relating to the 25 Trademark Applications, as moot.

### 2. Date of First Use — Blue Surfer Mark

Starbuzz further contends that Fantasia's claim for cancellation of the Blue Surfer Mark fails because Fantasia's allegation that Starbuzz falsely stated the first-use date is immaterial to the USPTO's decision to approve a mark for publication. (*See* Mot. to Dismiss 13). Indeed,

> the critical question . . . is whether the mark was in use in connection with the identified goods as of the filing date of his use-based application. That is, if the mark was in use in commerce as of the filing date, then the claimed date of first use, even if false, does not constitute fraud because the first use date is not material to the Office's decision to approve a mark for publication.

*Hiraga v. Arena*, 90 U.S.P.Q. 2d 1102, 1107 (TTAB 2009) (citations omitted). The Court agrees Fantasia's allegation that Elhalwani knew Starbuzz had not used the Blue Surfer Mark in commerce "at least as early as 8/16/2009" (SATPC ¶ 39) is immaterial to a claim of fraud upon the USPTO. The Court therefore grants the motion to dismiss with respect to these allegations concerning the Blue Surfer Mark.

Fantasia, however, does allege an additional fact that Starbuzz does not address — that Elhalwani in the June 4 Declaration stated that the Blue Surfer Mark was being used on a "Tobacco Substitute, Namely, Herbal Molasses." (*Id.* ¶ 40). Fantasia alleges that Elhalwani knew this statement was false when he signed the June 4 Declaration. (*See id.* ¶ 41). Starbuzz does not contest or address these allegations at all — it does not contend that Fantasia failed to plead fraud with specificity as to the Blue Surfer Mark, or that Fantasia lacks standing to contest the mark. Indeed, whereas the Court found in the January 24, 2012 Order that Fantasia failed to

Case No. 11-21900-CIV-ALTONAGA/Simonton

plead fraud with specificity, here the Court finds Fantasia has rectified certain shortcomings by identifying when, where, and how the alleged misstatements were conveyed with respect to the Blue Surfer Mark. The Court therefore denies the motion to dismiss with respect to these allegations concerning the use of the Blue Surfer Mark alone.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Starbuzz's Motion to Dismiss **[ECF No. 101]** is **GRANTED in part** and **DENIED in part**, and Starbuzz's Motion to Strike **[ECF No. 102]** is **DENIED as moot.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of March, 2012.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record