UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-21900-CIV-ALTONAGA/Simonton

**DREW ESTATE HOLDING CO., LLC**,

    Plaintiff,

vs.

**FANTASIA DISTRIBUTION, INC.**,

    Defendant/
    Third-Party Plaintiff,

vs.

**STARBUZZ TOBACCO, INC.**,

    Third-Party Defendant.
_____/

## **ORDER**

**THIS CAUSE** came before the Court upon Plaintiff, Drew Estate Holding Company LLC's ("Drew['s]") Motion for Summary Judgment ("Motion") [ECF No. 113], filed April 18, 2012. On May 25, 2011, Drew filed a Complaint [ECF No. 1] alleging unfair competition in violation of 15 U.S.C. § 1125(A) against Defendant, Fantasia Distribution, Inc. ("Fantasia"). Drew now moves for summary judgment on its unfair competition claim. Fantasia filed a Reply in Opposition to Drew Estate's Motion . . . ("Response") [ECF No. 132] on May 7, 2012, and Drew filed its Reply [ECF No. 146] on May 17, 2012. The Court has carefully reviewed the parties' written submissions and applicable law.

## I. BACKGROUND[1]

### A. Cigars and Hookah Tobacco

Cigars are tightly-rolled bundles of dried and fermented tobacco from which, when ignited, smoke may be drawn into the mouth. (*See* Pl.'s Statement of Facts . . . ("SMF") [ECF No. 114] ¶ 1). Hookah tobacco (also called shisha, smoking tobacco, molasses tobacco, or simply tobacco) is a type of loose, flavored tobacco placed into a hookah pipe, which is an instrument in which smoke is passed through a water basin, which purifies and cools the smoke before it is drawn into the mouth. (*See id.* ¶ 2[2]).

Cigar and hookah tobacco products are available for purchase by adults in retail tobacco stores across the country and promoted at the same industry trade shows. (*See id.* ¶¶ 7, 9). They are often advertised through the same media, including social media such as Facebook or YouTube; in print magazines such as *Smoke Shop*, *Tobacconist*, and *Tobacco Outlet Business*; and in tobacco retail stores such as Karma Cigar & Retail Hookah Lounge and Village Cigar Emporium. (*See id.* ¶ 8). There is overlap between the classes of consumers, all adults over 18, who buy and smoke cigars, infused cigars, and hookah tobacco. (*See id.* ¶ 10).

### B. Morfiya, Inc.

Morfiya, Inc. ("Morfiya") is a New York corporation that owns, *inter alia*, U.S. Trademark Registration Number 2,440,808 for the word mark "ACID" for "cigars" ("'808 Mark"), which registration was issued on April 30, 2001, based on use of the mark in commerce at least as early as July 15, 1999. (*Id.* ¶ 11). This registration is incontestable under 15 U.S.C. §

---

[1] Unless otherwise noted, the facts are undisputed.

[2] Fantasia disputes this description of hookah tobacco to the extent it purports to be a complete accounting of the differences between hookah and cigar tobacco. (*See* Def.'s Statement of Material Facts in Opposition . . . ("SMFO") [ECF No. 132-1] ¶ 2). This background is therefore not intended to be a comprehensive description of all facets of cigar and hookah smoking and production.

1115(b). (*See id.*). Morfiya also owns U.S. Trademark Registration Number 3,687,647 for the mark "ACID CIGARS (& Motorcycle Design)" for "cigars, tobacco, and related products, namely cigar boxes, cigar and cigarette lighters, cigar and cigarette holders, ashtrays, cigar bands, cigar cutters, humidors, and cigar tubes" ("'647 Mark"), which registration was issued on September 22, 2009, based on use of the mark in commerce at least as early as August 2000. (*Id.* ¶ 12). The registration includes a disclaimer of the descriptive wording "CIGARS." (*Id.*). Plaintiff refers to the '808 and '647 Marks jointly as the "ACID mark." (Mot. 4).

On December 15, 1999, Morfiya entered into an exclusive trademark license agreement with Plaintiff Drew, pursuant to which Drew became the exclusive licensee of the ACID mark in the United States. (*See* SMF ¶ 13). The term "acid" is arbitrary as applied to tobacco products. (*Id.* ¶ 14). The term "acid" is not used by any other entities within the tobacco industry, except for Drew's authorized licensee, Third-Party Defendant Starbuzz Tobacco, Inc. ("Starbuzz") and Defendant Fantasia. (*Id.* ¶ 15).

### C.     Drew Estate Holding Company LLC

Drew is a Delaware limited liability company doing business in Miami, Florida. (*See id.* ¶ 16). Drew manufactures, promotes, and sells tobacco products, and its current brand portfolio includes the brands "DREW ESTATE," "AMBROSIA," and "JAVA." (*Id.* ¶ 17). Drew distributes, promotes, and sells its products to adults over the age of 18 through brick-and-mortar and online tobacco retail stores, smoke shops, and lounges. (*See id.* ¶ 18). Drew advertises through social media, print advertisements in magazines, and its website. (*See id.* ¶ 19). It also makes promotional items such as t-shirts, ashtrays, cigar cutters, jewelry, paintings, posters, and matches. (*See id.*). Drew hosts private and public parties and promotional events, at which it

provides product samples and promotional items. (*See id.*). Drew further promotes its products at industry trade shows. (*See id.* ¶ 20).

Products branded with the ACID mark have received significant positive recognition within the tobacco industry. (*See id.* ¶ 23). Since 1999, Drew has made, promoted, and sold ACID cigars containing infused tobacco, which come in four packaging designs in red, gold, purple, and blue. (*See id.* ¶ 24). The best-selling variety is sold in the blue-colored package. (*See id.*). Drew's ACID cigars are sold individually and in packs of varying amounts. (*See id.* ¶ 25). Individual cigars are sold at retail for prices between $4.45 to $12.45. (*See id.*).

In the summer of 2010, Drew entered into negotiations with Starbuzz Tobacco, Inc. ("Starbuzz") about a proposed sub-license agreement, pursuant to which Starbuzz would manufacture, promote, and sell a hookah tobacco product under the ACID mark. (*See id.* ¶ 28).

D.  **Starbuzz Tobacco, Inc.**

Starbuzz is a California corporation doing business in Anaheim, California. (*See id.* ¶ 29). Starbuzz was founded in 2005 and purports to be the leading hookah tobacco manufacturer and distributor in the United States. (*See id.* ¶ 30). Starbuzz distributes and sells all of its hookah tobacco products through brick-and-mortar retail stores, online tobacco retail stores, hookah and smoke lounges, social network, and Starbuzz's own e-commerce website www.starbuzztobacco.com. (*See id.* ¶ 32). Starbuzz's hookah tobacco products have a suggested retail price from $4.99 for 50 gram cans to over $19.99 for 250 gram cans. (*See id.* ¶ 33).

Starbuzz owns U.S. Trademark Registration Number 4,004,853 for the word mark "BLUE SURFER" in connection with tobacco products ("'853 Mark"), based on a claim of use of the mark in commerce since as early as August 16, 2009. (*See id.* ¶ 34). In September 2010,

Drew executed a formal sub-license agreement with Starbuzz pursuant to which Starbuzz would manufacture, promote, and sell ACID hookah tobacco, which comes in red, gold, purple, and blue packages, of which the best-selling variety is blue. (*See id.* ¶ 36). Starbuzz's use of the '647 Mark for ACID CIGARS (& Motorcycle Design) inures to the benefit of Drew as a matter of law. (*See id.* ¶ 37).

### E.     Fantasia Distribution, Inc.

Fantasia is a California corporation doing business in Anaheim, California. (*See id.* ¶ 38). Fantasia makes hookah tobacco, offering its products for sale through brick-and-mortar retail tobacco stores and online retail tobacco stores. (*See id.* ¶ 39). Fantasia's products are carried by several wholesale distributors. (*See id.* ¶ 40). Fantasia promotes its hookah tobacco products through social media, namely Facebook and YouTube. (*See id.* ¶ 41). Fantasia publishes product catalogs; sends emails directly to distributors and retailers; makes promotional items such as shirts, jewelry, watches, and USB drives; engages in local guerilla marketing; puts up posters and flyers; and throws parties and promotional events with samples in retail stores. (*See id.* ¶ 41).

Fantasia's Executive Director and Director of Sales have acknowledged they attend trade shows to promote Fantasia's hookah tobacco products, and they have personally seen other tobacco products, including cigars, promoted at these same events. (*See id.* ¶ 42). Fantasia asserts its products are promoted to adults aged 18 to 25, and that its actual consumers are comprised primarily of adults aged 18 to 25. (*See id.* ¶ 43). Fantasia first heard of Drew's ACID mark in June 2007, when employees of both Fantasia and Drew were attending the same trade show. (*See id.* ¶ 43).

On December 27, 2010, Fantasia filed U.S. Trademark Application Serial Number 85/206,113 for the mark "SURFER ON ACID" for "hookah tobacco, molasses tobacco, smoking tobacco, tobacco," based on its claim of use in interstate commerce since as early as November 24, 2009. (*See id.* ¶ 45). The SURFER ON ACID mark is promoted only by Fantasia in advertisements featuring all of Fantasia's brands or products, and is not promoted by any third party. (*See id.* ¶ 46). The product packaging for SURFER ON ACID hookah tobacco features the image of a blue-colored surfer on a surfboard riding a wave. (*See id.* ¶ 47). Fantasia conducted a trademark search for the SURFER ON ACID mark, which revealed Drew's ACID mark, but Fantasia nevertheless proceeded with its use of the SURFER ON ACID mark. (*See id.* ¶ 49). Fantasia's trademark application for SURFER ON ACID was published for opposition purposes on March 24, 2011, and was timely opposed. (*See id.* ¶ 50).

### F. The Current Dispute

On March 24, 2011, Drew sent Fantasia a letter demanding that Fantasia terminate use of the term "acid" as a name or mark, or part of a name or mark, including SURFER ON ACID. (*See id.* ¶ 51). Fantasia responded on April 7, 2011, refusing to do so. (*See id.*).

## II. LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making its assessment of summary judgment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in

favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir. 1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### III. ANALYSIS

Drew asserts it is entitled to summary judgment on its unfair competition claim. Under the Lanham Act, a defendant is liable for trademark infringement if, without consent, he "use[s]

in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services" which "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim, a plaintiff must demonstrate: (1) plaintiff's mark has priority; (2) defendant used plaintiff's mark in commerce; and (3) defendant's mark is likely to cause consumer confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir. 1997); *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300–01 (11th Cir. 2001). With regard to unfair competition, "'[t]he legal standard for unfair competition . . . and trademark infringement under both the Lanham Act and common law has been held to be essentially the same.'" *Knights Armament Co. v. Optical Systems Tech., Inc.*, 568 F. Supp. 2d 1369, 1376 (M.D. Fla. 2008) (quoting *Turner Greenberg Assocs., Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004)).

Drew contends there are no genuine issues of material fact with respect to Drew's prior rights in the ACID mark in connection with cigars and related tobacco products, or with respect to Fantasia's subsequent use of the confusingly similar mark SURFER ON ACID in connection with a closely related product, hookah tobacco. (*See* Mot. 1). The Court addresses the parties' arguments in turn.

  A.  **Whether Drew Has Standing to Bring This Action**

Drew first asserts it has standing to bring this action as the exclusive licensee of the ACID mark. (*See* Mot. 3–4). Indeed, it is beyond dispute that on December 15, 1999, Drew entered into an agreement by which it became the exclusive licensee of the ACID mark in the United States. (*See* SMF ¶ 13). A "Lanham Act plaintiff must have rights in the name at issue to seek protection." *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d

1396, 1412 (11th Cir. 1998). A licensee's standing to bring a trademark infringement claim "largely depends on the rights granted to the licensee in the licensing agreement." *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, No. 8:06-CV-1790-T-27EAJ, 2006 WL 3755328 at *6 (M.D. Fla. Nov. 15, 2006) (quoting *Ultrapure Sys., Inc. v. Ham-Let Group*, 921 F.Supp. 659, 665 (N.D. Cal. 1996)). An exclusive licensee may have a property interest in the trademark and standing to enforce it. *See id.* (holding exclusive licensee had standing to enforce trademark where it was granted exclusive use of "all of [registrant's] intellectual property" in United States including trademark, agreement did not restrict licensee's ability to enforce, and agreement was silent as to whether registrant retained ownership of the mark).

Drew has submitted evidence that under the license agreement with Morfiya, Drew was granted the right to use the ACID mark on all tobacco products, and even to initiate lawsuits to enforce its rights in the ACID mark. The Agreement signed in 1999 by Drew with respect to Morfiya's marks ("1999 Agreement") [ECF No. 118-2] provides that Morfiya is the Licensor, and Drew the exclusive Licensee. (*See* 1999 Agreement 1; 2006 Amendment to 1999 Agreement ¶ 5 [ECF No. 118-2]). The 1999 Agreement states:

> Licensee, at its sole cost and expense and in its own name and at its sole discretion, may prosecute any action or proceeding which Licensee deems necessary or desirable to protect the Licensed Mark as it relates to Licensed Products and the Licensed Images, including but not limited to actions or proceedings involving infringement of the Licensed Mark or Licensed Images. Upon written request by Licensee, Licensor shall, unless it reasonably declines to do so, join Licensee in any such action or proceedings.

(*Id.* ¶ 14.6). The definitions of "Licensed Images," "Licensed Mark," and "Licensed Products" indicate that this agreement covers the mark, rights, and products at issue in this litigation.[3]

---

[3] The "Licensed Images" are the "'Acid on Motorcycle' image, the images on the 'Acid face stickers' and 'Acid bands' and any other images designed for and used by Licensee with respect to cigars and other tobacco and tobacco-related products." (*Id.* ¶ 1.1.2; 2006 Amendment to 1999 Agreement ¶ 6). The Licensed Mark is defined as "ACID" and "ACID CIGARS & design," clearly incorporating a reference to

Fantasia's sole argument against Drew's standing in this action is that "not a single license agreement produced by Drew has demonstrated that it is an exclusive licensee of the '808 Mark." (Resp. 15). Even if true, this fact does not affect Drew's standing to bring claims alleging injury to its rights in the '647 Mark and otherwise as set forth in its agreements with Morfiya, which Drew maintains were injured by Fantasia's actions. The Court finds Drew has standing to bring claims of injury to its rights in the ACID mark.

### B. Whether Drew's Mark Has Priority in Connection with Hookah Tobacco

Drew asserts that its priority to the ACID mark is undisputed. Indeed, the Court has twice ruled that the ACID mark has priority over the SURFER ON ACID mark, on the basis of uncontroverted documentary evidence. (*See* Jan. 24, 2012 Order 7 [ECF No. 98]; Mar. 13, 2012 Order 7 [ECF No. 109]). There are no new facts presented that would disturb this finding.

Fantasia asserts, however, that Drew does not have priority with respect to the *hookah* industry, as opposed to the cigar industry. Nevertheless, this issue too has previously been decided by the Court. In the March 13, 2012 Order, the Court set forth the "natural expansion" doctrine pursuant to which a trademark owner enjoys protection over goods on which the mark has been used as well as those related goods that lie within the realm of the natural expansion of

---

the '647 Mark. (1999 Agreement ¶ 1.1.1 & Ex. A; 2010 Second Amendment to Agreement [ECF No. 18-2]). The Licensed Products are defined as "all Products sold or shipped by Licensee which bear the Licensed Mark," where Products are defined as:

> 1.) <u>Tobacco Products</u>: Cigars, cigarettes, cigarillos, pipe tobacco, roll-your-own tobacco, bides, clove cigarettes, herbal cigarettes and all other tobacco products, point of sale items (grenades, gift pacs, 10 pacs, etc.).
>
> 2.) <u>Tobacco Accessories</u> (including without limitation): Lighters, cigar cutters, ash trays, tobacco pouches, pipes and pipe tools, rolling papers, machines for "roll-your-own."
>
> 3.) <u>Promotional Items</u>: Tee-shirts, playing cards, hats, guyabera [sic] shirts, holders, tasters, box-press machines, give-aways.

(1999 Agreement ¶ 1.1.1 & Ex. B).

its business. (Mar. 13, 2012 Order 8 (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 (11th Cir. 2001))). The applicable test is the "source or sponsorship" test, under which a trademark owner is protected with respect to any product the buying public might reasonably think came from the same source. (*Id.* (quoting *Planetary Motion*, 261 F.3d at 1201)). The Court explicitly addressed the question of whether hookah and molasses tobacco were within the realm of natural expansion of the protection of the Acid mark. (*See id.*). The Court found hookah to be sufficiently related to the cigar and other goods covered by the Acid mark to be covered by that mark's scope of protection. (*See id.* 9). The Court's finding in the March 13, 2012 Order was made on Starbuzz's motion to dismiss Fantasia's claims and predicated on documentary evidence. Thus, the Court was persuaded by the fact that Fantasia's own application for the SURFER ON ACID mark was purportedly for "Hookah tobacco; Molasses tobacco; Smoking tobacco; Tobacco," which the Court could not find to exclude cigars and goods covered by the ACID mark. (*Id.*).

On this Motion for summary judgment, the parties provide additional arguments on this point. In further support of the finding that hookah products are within the realm of natural expansion of Drew's business, Drew lists numerous registered marks that have been identified for use in connection with both cigars and hookah tobacco products, as evidence that many companies manufacture both. (*See* Mot. 11). Drew contends that it has long been aware of the obvious relationship between hookah and cigars, and from 2005 to 2006 attempted to market a HOOKAH brand infused cigar. (*See id.* 12). Fantasia does not dispute the fact that Drew introduced a hookah-flavored cigar in the past, although it contends that this single attempt does not represent a pursuit of the hookah market. (*See* SMFO ¶ 27). While that effort was discontinued, Drew maintained an interest in hookah, culminating in its sub-license to Starbuzz

11

for production and sale of ACID hookah tobacco, a fact beyond dispute. (*See* Mot. 12).

The parties do not dispute that cigar and hookah products are promoted at the same trade shows, advertised through the same media, and sold in the same stores. (*See* SMF ¶¶ 7–9). They also do not dispute the overlap between those who consume cigars and hookah tobacco. (*See id.* ¶ 10).

Drew further cites to *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525 (11th Cir. 1985), a case that is relevant to the present dispute. In *E. Remy Martin*, the Eleventh Circuit found cognac and brandy, which are distilled from wine, to be sufficiently related to wine that the public might attribute these products to a single source. *See* 756 F.2d at 1530. The court held, "[t]o us it appears quite likely that, even assuming a sophisticated consumer from the drinking world, such a consumer could easily conclude that [the brandy and cognac producer] had undertaken the production and sale of wine and that its name and goodwill therefore attached to" the wine produced by the junior user of the mark. *Id.* The court therefore found the district court abused its discretion by not granting the senior user of the mark a preliminary injunction. *See id.* at 1534. Similarly, inherent in the March 13, 2012 Order was a finding that the public could believe the same producer of cigars had undertaken production of hookah.

Fantasia raises one argument to counter the Court's previous finding, the undisputed facts cited above, and the case law Drew cites. This is to point to the fact that Drew did not include any reference to the '808 Mark in its sub-license agreement with Starbuzz, executed in September 2010 ("Sub-License Agreement"). (*See* SMF ¶ 36; Sub-License Agreement [ECF No. 118-10]). Fantasia argues that this demonstrates neither Drew nor Starbuzz found the '808 Mark applicable to the hookah industry. (*See* Resp. 3). Fantasia's argument fails to persuade,

given that even if there were no such Sub-License Agreement or other attempt by Drew to enter the hookah market, the "source or sponsorship" test would not require it. All that is necessary is that the buying public find hookah to be related enough to cigars to reasonably believe the same company might produce both. This is what the Court found in the March 13, 2012 Order, and the fact that Drew did not include the '808 Mark in the Sub-License Agreement does not affect this analysis.

Furthermore, it is undisputed that the Sub-License Agreement between Drew and Starbuzz, granting the latter an exclusive sub-license to use the ACID mark on hookah tobacco products, explicitly incorporates a reference to the '647 Mark, among others. (*See* Sub-License Agreement ¶ 1.3). As mentioned, the undisputed fact is that the '647 Mark covers the words "ACID CIGARS" in conjunction with a design for "cigars, tobacco, and related products, namely cigar boxes, cigar and cigarette lighters, cigar and cigarette holders, ashtrays, cigar bands, cigar cutters, humidors, and cigar tubes." The '808 Mark, in turn, covers the word mark "ACID" for "cigars." The addition of the '647 Mark over the '808 Mark in the Sub-License Agreement hardly requires the conclusion that Drew has no rights to the mark "ACID" with respect to goods related to cigars. Rather, the inclusion of the '647 Mark in Drew's foray into the hookah market with Starbuzz merely reinforces Drew's argument that this expansion into hookah using the ACID mark was a natural one, given its line of business.

The sole reason Fantasia offers to reconsider the Court's earlier Order fails to persuade. The Court does not find a material issue of fact in dispute as to whether hookah and cigars are reasonably attributable to the same source. Accordingly, the Court follows its earlier finding in concluding that Drew's mark has priority over Fantasia's, including with respect to hookah tobacco products.

C.  Whether Fantasia's Mark is Confusingly Similar to Drew's

There is no dispute as to the second element of a trademark or unfair competition claim — that Fantasia has used the disputed mark in commerce. *See Lone Star*, 122 F.3d at 1382. The sole remaining issue to consider is whether Fantasia's mark is likely to cause consumer confusion. *See id.* Likelihood of confusion involves a seven-factor inquiry into the: "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Planetary Motion*, 261 F.3d at 1200 n.22.

As to the first factor, the parties do not dispute that the ACID mark is an arbitrary one as applied to tobacco products. (*See* SMF ¶ 14). Some of the above discussion on priority of marks is relevant to the inquiry into likelihood of confusion. *See id.* at 1201–02 (stating that question of whether public may believe goods come from same source is a "facet of the likelihood of confusion test") (quoting *Tally-Ho, Inc. v. Coast Community College District*, 889 F.2d 1018, 1027 (11th Cir. 1989)). Thus, the Court's findings above are relevant to the third, fourth, and fifth factors, which all favor a finding of likelihood of confusion. Drew acknowledges there is no evidence of actual confusion as of yet, for the seventh factor. As for the sixth factor, it is undisputed that Fantasia heard of Drew's ACID mark as early as June 2007 (*see* SMF ¶ 43), or over three years before Fantasia filed its application for the SURFER ON ACID mark in December 2010, a fact that tends to favor a likelihood of confusion given the history of this litigation, particularly regarding the second factor of similarity of mark.

In support of its contention that there is at least a material issue of fact in dispute as to whether Drew's and Fantasia's marks create a likelihood of confusion, Fantasia offers a supposed "Expert Report of Mark Partridge" ("Partridge Report") [ECF No. 137] that purports to

show "the use of the SURFER ON ACID mark for hookah tobacco does not create a likelihood of confusion with the use of ACID mark for cigars or hookah tobacco." (Partridge Rep. ¶ 24). Relying on the Partridge Report, Fantasia contends, *inter alia*, that "adding the words 'Surfer' and 'On' further distinguishes the Fantasia mark from Drew's mark." (Resp. 9).

Drew asserts, correctly, that the Partridge Report deserves little weight. The parties have not submitted briefing on its admissibility under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), yet issues are apparent from the face of the Partridge Report. Nowhere does Fantasia or Partridge explain who this expert is, what methods he used, or why his opinion merits consideration. If anything, what the Partridge Report primarily does is apply facts in the record to the seven-factor likelihood-of-confusion test to create a legal opinion, which the Court will not consider. *See Omar v. Babcock*, 177 F. App'x 59, 63 n.5 (11th Cir. 2006) (holding that a party "cannot rely on legal conclusions articulated by an expert to meet his burden of coming forward with relevant evidence").

This so-called expert report aside, the Court is somewhat confounded at Fantasia's argument, which is an about-face from positions taken earlier in this litigation. In Fantasia's initial responsive pleading to the Complaint, Fantasia chose to bring intermingled counterclaims and third-party claims against both Drew and Starbuzz, alleging trademark infringement among other claims, and stating to the Court that there is a likelihood of confusion between the ACID and SURFER ON ACID marks requiring an injunction against further use of the ACID mark on hookah tobacco.[4] These counterclaims and third-party claims engendered a round of briefing, at

---

[4] (*See* Fantasia's Ans. and Countercl. and Third Party Cl. Against Starbuzz Tobacco, Inc. [ECF No. 53] ¶ 25 (alleging that the use of the ACID mark "unlawfully exploits the commercial value Fantasia has developed in the SURFER ON ACID mark, and is likely cause [sic] confusion"); *id.* 12 (seeking to enjoin Drew and Starbuzz from "[u]se of the ACID mark, and any phonetic equivalent thereof, as it relates to hookah tobacco")).

the end of which the Court permitted Fantasia to amend its responsive pleading. Fantasia did so, and again brought an unfair competition and trademark infringement claim, alleging that the ACID and SURFER ON ACID marks are confusingly similar, and even explicitly adopting Drew's position that the difference of the words "SURFER ON" does not render them less so.[5] The parties again engaged in briefing on these claims, and the Court permitted Fantasia to amend its pleading yet again. For a third time, Fantasia brought the same unfair competition and trademark infringement claim against Starbuzz and Drew, again alleging likelihood and confusion with their marks.[6] These claims, for a third time, required the expenditure of resources of not only the parties but the Court, which ultimately dismissed the unfair competition and trademark infringement claim as to Starbuzz and Drew.

For Fantasia now to insist that its mark is not similar to the ACID mark is to make a farce of Fantasia's numerous previous representations to the Court. Fantasia's actions are not *per se* prohibited by the doctrine of judicial estoppel as set forth in *New Hampshire v. Maine*, 532 U.S. 742 (2001), as Fantasia has not prevailed on its previous argument that the SURFER ON ACID mark is likely confused with the ACID mark. *See* 532 U.S. at 749. Nevertheless, some of the policy considerations at work in the judicial estoppel doctrine are relevant here. "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing

---

[5] (*See* Fantasia's Am. Ans. and Countercl. and Third Party Cl. Against Starbuzz Tobacco, Inc. [ECF No. 82] ¶ 14 ("Plaintiff's and Starbuzz's use of the ACID mark is confusingly similar to the Fantasia's SURFER ON ACID marks in sound, appearance and commercial impression."); ¶ 16 ("The addition of 'SURFER ON' (and the addition of the generic 'CIGARS' to the ACID mark of Registration No. 2,440,808) does nothing to obviate the close similarity between the parties' marks.")).

[6] (*See* Fantasia's Am. Ans. and Countercl. and Third Party Cl. Against Starbuzz Tobacco, Inc. [ECF No. 99] ¶ 28 ("The mark ACID is confusingly similar to Fantasia's SURFER ON ACID mark in sound, appearance and commercial impression"); ¶ 31 ("The addition of 'SURFER ON' does nothing to obviate the close similarity between the parties' marks.")).

positions according to the exigencies of the moment." *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993) (internal quotation marks and citation omitted). For Fantasia to have heard of Drew's mark years before it sought to register its own, then bring claims and actually hale a third party into court on allegations of similarity of mark, and now to deny the same allegations — all within the span of a single lawsuit — could well be called "improper use of judicial machinery." *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980).

In any event, even if Fantasia's previous allegations regarding likelihood of confusion are not necessarily binding pursuant to judicial estoppel, the Court finds them to be highly persuasive evidence of the similarity of the marks. Both Drew and Fantasia seek injunctions against the use of each other's marks on hookah products, and Fantasia repeated this prayer for relief to the Court no less than three times. Given these facts, the Court finds there to be no genuine dispute as to whether the parties find their marks to be similar, notwithstanding the contradictory and self-serving position Fantasia now takes to oppose this Motion for summary judgment on Drew's claims. In every meaningful way, the parties seem to agree that SURFER ON ACID is similar to ACID, and the Court agrees as well.

"In evaluating the similarity of marks, we must consider the overall impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *E. Remy Martin*, 756 F.2d at 1531. Both marks contain the work "ACID." The '647 Mark features the word "ACID" in capital letters, with the word "CIGARS" beneath it in capital letters, and a silhouetted, apparently monochromatic figure smoking a cigar and leaning against a motorcycle. (*See* '647 Mark Registration Data [ECF No. 118-3]). The SURFER ON ACID 50-gram box features the word "SURFER" in capital letters and "on Acid" in lowercase. (*See* [ECF No. 121-7]). Although the copy provided to the Court is

of poor quality, the package also features an image of a person, who the parties stipulate is colored blue and riding a surfboard. (*See* SMF ¶ 47). The parties concur that "acid" constitutes a strong tobacco mark, and that no other parties use the term in a mark for tobacco other than those presently before the Court. (*See id.* ¶¶ 14–15).

All things considered, the Court finds the two marks to be similar on the whole, when one compares the appearance of the marks and packaging, and the sound and meaning of the word "acid" as used for tobacco. Even the figures on the package and addition of the words "SURFER ON" support a finding a similarity. If the public has seen an ACID product featuring a figure on a motorcycle, the public could reasonably believe that SURFER ON ACID represented the same company's product with a new surfer theme. This does not mean the marks are necessarily identical or universally confusing. To prevail on its claim, Drew need only show that the public might reasonably think its products came from the same source as the SURFER ON ACID products. *See Planetary Motion*, 261 F.3d at 1201. Especially given the context of the parties' behavior in this litigation, the Court finds that the public may reasonably so think, and that a *likelihood* of confusion has therefore been demonstrated beyond dispute.

Accordingly, the Court grants summary judgment on Drew's claim for unfair competition.

### IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that:

Plaintiff's Motion for Summary Judgment **[ECF No. 113]** is **GRANTED**. A final judgment will be entered pursuant to this Order. Furthermore, in light of this result, Plaintiff's

Case No. 11-21900-CIV-ALTONAGA/Simonton

Motion for Sanctions Relating to Defendant Fantasia Distribution, Inc.'s Failure to Comply With the Court's Order to Produce Specific Documents . . . , etc. **[ECF No. 149]** is **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of June, 2012.

                                                                */s/ Cecilia M. Altonaga*
                                                **CECILIA M. ALTONAGA**
                                                **UNITED STATES DISTRICT JUDGE**

cc: counsel of record