UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-21900-CIV-ALTONAGA

DREW ESTATE HOLDING CO., LLC,

       Plaintiff,

vs.

FANTASIA DISTRIBUTION, INC.,

       Defendant/
       Third-Party Plaintiff,

vs.

STARBUZZ TOBACCO, INC.,

       Third-Party Defendant.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Fantasia Distribution, Inc.'s ("Fantasia['s]") Motion for Entry of Judgment or, in the Alternative, Bifurcation of Issues . . . ("Motion") [ECF No. 276], filed January 29, 2014. The Court has carefully considered Plaintiff, Drew Estate Holding Company LLC's ("Drew['s]") Memorandum in Opposition to the Motion of Fantasia Distribution, Inc. for Judgment Pursuant to Rule 52(c) ("Response") [ECF No. 278]; Fantasia's Reply [ECF No. 279]; the record; and applicable law.

## I.      PROCEDURAL HISTORY

On July 6, 2012, the Court issued a Final Judgment [ECF No. 173] in favor of Drew and against Fantasia. The Final Judgment was premised on the Court's earlier grant of summary judgment in Drew's favor on Plaintiff's claim of unfair competition in violation of 15 U.S.C. section 1125(A). (*See* June 25, 2012 Order ("Summary Judgment Order") [ECF No. 165]). The

Final Judgment granted permanent injunctive relief in favor of Drew and enjoined Fantasia from using the name SURFER ON ACID in connection with tobacco products because of the likelihood of confusion with Drew's ACID mark.  (*See id.* 2).  In the Final Judgment, "the Court retained jurisdiction "for purposes of enforcing the provisions of th[e] Final Judgment and separately entered monetary award (if any), by way of contempt or otherwise."  (*Id.* (alterations added)).

On August 1, 2012, Drew filed a Motion for an Award of Defendant's Profits Pursuant to 15 U.S.C. [section] 1117(a) [ECF No. 178], arguing Drew was entitled to profits because Defendant's infringement "was willful or deliberate, the [D]efendant was unjustly enriched, [and] an award is necessary to deter future conduct." (*Id.* 1 (alterations added; citations omitted)). In its Opposition to Drew Estate's Motion for Award of Profits [ECF No. 185], Fantasia argued the request for profits required an evidentiary hearing or jury trial on the issue of Fantasia's willfulness, as genuine issues of material fact existed.  (*See id.* 3–4).  In the alternative, Fantasia argued should the Court find Fantasia possessed willful intent when it marketed and sold the SURFER ON ACID mark, a separate hearing should be held in which Fantasia could submit evidence as to actual damages.  (*See id.* 12).  On August 28, 2012, the Court granted Drew's motion for an award of Fantasia's profits under 15 U.S.C. section 1117(a) ("section 1117(a)"). (*See* Aug. 28, 2012 Order ("Profits Order") [ECF No. 190]).

On September 19, 2012, Fantasia appealed the Summary Judgment Order, Final Judgment, and Profits Order, among others, to the Eleventh Circuit.  On October 17, 2013, Fantasia moved for a Limited Stay of Execution Pending Appeal ("Motion for Stay") [ECF No. 219], seeking to stay execution of the Final Judgment and Profits Order.  In particular, Fantasia requested an evidentiary hearing on willfulness and to determine what amount of profits, if any,

should be awarded.  In supplemental briefing, and at the Court's suggestion during a November 14, 2012 hearing [ECF No. 234], Fantasia requested an indicative ruling that upon a limited remand, the Court would hold an evidentiary hearing and reconsider the Profits Order.  (*See* Supp. Brief 7–8 [ECF No. 236]).

In a January 3, 2013 Order [ECF No. 246], the Court indicated an evidentiary hearing would be held if the matter were remanded.  (*See id.* 7–11).  Subsequently, the Eleventh Circuit remanded the case "to hold an evidentiary hearing on the issue of profits and to enter an amended final judgment [— whatever that may be —] based upon what transpires at the hearing" and the Court's findings.  *Drew Estate Holding Co. v. Fantasia Distribution, Inc.*, 539 F. App'x 998, 999 (11th Cir. 2013), *available at* [ECF No. 271].

An evidentiary hearing began on January 15, 2014 [ECF No. 273].  (*See* "Hearing Transcript" [ECF No. 274]).  At the hearing, Drew presented the testimony of Randy Jacob Bahbah ("Bahbah"), Fantasia's President, and Drew's damages expert and forensic accountant, Carlyn Irwin.  (*See* Hr'g Tr. 6:15–23, 35:14–38:10).  The hearing was adjourned after Drew objected to Fantasia's request to admit a "QuickBooks printout profit and loss" statement for November 2009 through May 2012 ("profit and loss statement"), contending the exhibit failed to satisfy Federal Rule of Evidence 1006.  (Hr'g Tr. 50:3–15, 50:17–53:20).  During the hearing, the Court noted Plaintiff could not be expected to finish its presentation of evidence in light of the newly produced profit and loss statement.  (*See id.* 56:6–58:24).  Before resuming the hearing, Fantasia would have to provide Drew the exhibit and any supporting information, and make Bahbah available for a third deposition to answer questions about the exhibit.  (*See id.* 56:6–57:6).

Before Drew could resume the hearing, Fantasia submitted the present Motion, arguing a final judgment pursuant to Rule 52(c) should be entered in its favor.  (*See* Mot. 6).  On March 3, 2014, the parties filed a Stipulation as to the Amount of Profits ("Profits Stipulation") [ECF No. 280], agreeing the net profits from Fantasia's sale of tobacco products bearing the mark SURFER ON ACID were $228,406.00.  (*See id.*).

## II.  FACTUAL BACKGROUND

In the Summary Judgment Order, the Court set out the undisputed facts of the case.  That discussion is repeated here[1] as are additional facts gathered from evidence presented at the January 15 Hearing.[2]

Drew manufactures, promotes, and sells tobacco products.  In 1999, Drew became the exclusive licensee of the ACID mark in the United States, a mark that has received significant positive recognition in the tobacco industry.  Fantasia makes hookah tobacco, offering its products for sale through brick-and-mortar and online retail tobacco stores, including sales to companies that have "cigar" in their title.  (*See* Hr'g Tr. 13:11–16:16).  Fantasia sells a variety of flavors of hookah tobacco, many of which are cocktail flavors.[3]  (*See id.* 19:2–3, 19:14–21:22).

---

[1] Citations to the summary judgment record are not provided, as they may be found in the Summary Judgment Order.

[2] Most of the evidence at the January 15 hearing pertained to the calculation of a profits award, an amount since stipulated to by the parties.

[3] Fantasia's hookah cocktail flavors include: apple martini, black martini, cactus breeze, cosmopolitan, Cuban mojito, guava breeze, raspberry kamikaze, piña colada, fuzzy navel, mai tai, and strawberry daiquiri.  (*See id.* 19:14–21:22).  The principal graphics for the majority of these products correspond to the cocktails described in the names.

Fantasia first heard of Drew's ACID mark[4] in June 2007, when employees of both Fantasia and Drew were attending the same trade show.  (*See* Hr'g Tr. 7:14–19, 18:3–15).  Before filing an application to register its mark, Fantasia, via its attorneys, conducted a trademark search for the SURFER ON ACID mark, which revealed Drew's ACID mark.  (*See id.* 7:20–8:6, 10:6–24).  Still, Fantasia proceeded with its use of the SURFER ON ACID mark.  On December 27, 2010, Fantasia filed U.S. Trademark Application Serial Number 85/206,113 for the mark "SURFER ON ACID" for hookah tobacco, molasses tobacco, smoking tobacco, and tobacco, based on its claim of use in interstate commerce since as early as November 24, 2009.  The product packaging for SURFER ON ACID hookah tobacco features the image of a blue-colored surfer on a surfboard riding a wave.[5]

On March 24, 2011, Fantasia's trademark application for SURFER ON ACID was published for opposition purposes.  That same day, Drew sent Fantasia a letter demanding Fantasia terminate use of the term "acid" as a name or mark, or part of a name or mark, including SURFER ON ACID.  Fantasia responded on April 7, 2011, refusing to do so, claiming no likelihood of confusion between the two marks.  (*See* Ex. X, Apr. 7, 2011 Letter, 1–4 [ECF No. 118-24]).

On other occasions Fantasia applied to register the marks Jägerbomb and Incredible Hulk as hookah flavors in its product line.  (*See* Hr'g Tr. 22:8–24:2, 24:18–22).  Fantasia did not have a license to use the Jäger trademark (*see id.* 21:23–22:7) and subsequently applied for registration of Jägerbomb as a mark (*see id.* 22:8–10).  The holder of the Jäger mark wrote to

---

[4] Drew's Mark (Registration Number 3,687,647) features the word 'ACID' in capital letters, with the word "CIGARS" beneath it in capital letters, and a silhouetted, apparently monochromatic figure smoking a cigar and leaning against a motorcycle.

[5] The SURFER ON ACID fifty-gram box features the word "SURFER" in capital letters and "on Acid" in lowercase.

Fantasia opposing Fantasia's registration of the mark.  (*See id.* 22:11–23:11).   Thereafter, Fantasia reached a settlement to resolve this issue over use of the Jäger mark.  (*See id.*). Currently, Fantasia does not have a registration for Jägerbomb.  (*See id.* 23:13–16).

Fantasia also filed an application to register Incredible Hulk as a mark for tobacco products, which was denied.  (*See id.* 24:18–22).  The term Incredible Hulk is part of a licensing program regarding the cartoon and movie character, although it is also a type of cocktail drink. (*See id.* 24:10–25:11).  Fantasia did not obtain a protected mark for Incredible Hulk.  (*See id.* 24:18–22).

On May 25, 2011, Drew filed its Complaint [ECF No. 1] for unfair competition against Fantasia.

## III.   LEGAL STANDARD

A court may enter a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c).[6]  "A court may grant a Rule 52(c) motion made by either party or may grant judgment *sua sponte* at any time during a bench trial, so long as the party against whom judgment is to be rendered has been fully heard with respect to an issue essential to that party's

---

[6] Under Rule 52:

> (a) Findings and Conclusions.
>
> > (1) *In General.*  In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately.  The findings and conclusions . . . may appear in an opinion or a memorandum of decision filed by the court.  Judgment must be entered under Rule 58.
>
> *               *               *
>
> (c) Judgment on Partial Findings.  If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim . . . that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.  The court may, however decline to render any judgment until the close of the evidence . . . .

FED. R. CIV. P. 52(a), (c) (alterations added).

case." *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3d Cir. 2010) (internal quotation marks omitted); *Granite State Ins. Co. v. Smart Modular Techs., Inc.,* 76 F.3d 1023, 1031 (9th Cir. 1996) (Rule 52(c) "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." (quoting FED. R. CIV. P. 52(c) advisory committee's note)); *Morales Feliciano v. Rullán,* 378 F.3d 42, 59 (1st Cir. 2004) ("When a party has finished presenting evidence [on an issue] and that evidence is deemed by the trier insufficient to sustain the party's position, the court need not waste time, but, rather, may call a halt to the proceedings and enter judgment accordingly." (alteration added)); *cf. Smith v. Phil. Am. Life Ins., Co.*, 433 F. App'x 731, 734 (11th Cir. 2011) (noting the district court declined to rule on the Rule 52(c) motion until the close of all the evidence); *S.R. v. United States*, No. 07-20648-CIV, 2008 WL 4826090, at *1, *4 (S.D. Fla. Nov. 5, 2008) (finding the government was entitled to judgment on partial findings after the government's Rule 52(c) motion at the conclusion of the trial).[7]  In considering whether to enter a Rule 52(c) judgment, the district court applies the standard of proof and weighs the evidence the same as it would at the conclusion of trial.  *See Emerson Elec. Co. v. Farmer*, 427 F.2d 1082, 1086 (5th Cir. 1970); *EBC, Inc.*, 618 F.3d at 272 (noting the "district court should also make determinations of witness credibility" where appropriate).

---

[7] The requirement that an issue must be fully heard does not "amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence."  *First Va. Banks, Inc. v. BP Exploration & Oil, Inc.*, 206 F.3d 404, 407 (4th Cir. 2000).  It is within the trial court's discretion to enter a judgment on partial findings even where a party has represented it can put on additional evidence, if the court determines that evidence will have little or no probative value.  *See EBC, Inc.*, 618 F.3d at 272 n.21 (citing *id.*).

## IV.    ANALYSIS

### A.    Rule 52(c) Judgment

As a preliminary matter, the parties disagree over the appropriateness of the present Motion.  Drew stresses it did not conclude its case at the January 15 hearing, arguing the issue of Fantasia's liability for an award of profits was not fully heard.  (*See* Resp. 4).  As a result, Drew urges the Court to deny the Motion as "both untimely and untenable."  (*Id.* 3).  In the alternative, Drew asks the Court to defer judgment until after Plaintiff has presented all of its evidence.  (*See id.* 4 (citation omitted)).  For its part Fantasia contends the Court has discretion to grant the Motion as the issue of willfulness was fully heard at the hearing.  (*See* Mot. 6–7; Reply 3–4).  In support, Fantasia observes Drew has not set out "what additional evidence [Plaintiff] hopes to elicit and what it will prove" if permitted to continue presenting its case.  (Reply 3).

At the January 15 hearing, Drew presented most of its evidence,[8] including evidence relevant to the issue of willfulness.  Drew's case included the testimony of Bahbah and Irwin.  Drew also submitted two bench memoranda, "Concerning the Standard for an Award of Profits under the Lanham Act" and "Concerning the Inadmissibility of Evidence Not Properly Produced During Discovery."  (Hr'g Tr. 4:17–5:4).  While objecting to the Motion, Drew has not explained what additional evidence it intends to present on the issues of willfulness, unjust enrichment, or deterrence that would be material to the Court's determination of Fantasia's liability for an award of profits.  (*See* Reply 3–4; *see generally* Resp.).

---

[8] It appears the potential outstanding relevant evidence consists of the testimony of Drew's former president Steven Saka ("Saka"); the profit and loss statement itself; and testimony pertaining to the not-yet-admitted statement, including further examination of Bahbah.  This evidence is directed to the amount of any profits award, not Fantasia's liability for profits under theories of willfulness, unjust enrichment, or deterrence.

As stated, the parties have since stipulated to an amount of $228,406.00 as net profits from Fantasia's sale of tobacco products bearing the mark SURFER ON ACID.  (*See* Profits Stipulation 1).   This Profits Stipulation makes the Court's consideration of any evidence regarding the amount of profits unnecessary.  As the Court has fully heard Plaintiff's evidence regarding an award of profits, the Court properly considers the substance of Fantasia's Motion, specifically whether Plaintiff has demonstrated Fantasia's conduct was willful, Fantasia was unjustly enriched, or Fantasia needs to be deterred from future misconduct, justifying an award of profits.

## B.  Accounting of Profits

Under the Lanham Act, courts have discretion to determine the proper relief to grant a plaintiff who succeeds on its infringement claim, including whether to award profits.[9]  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 1:04-CV-1082-TWT, 2006 WL 1663357, at *6 (N.D. Ga. June 14, 2006) [hereinafter *Henkel*] (citations omitted); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) ("The Act confers upon the district court a wide scope of discretion to determine the proper relief due an injured party."); *Burger King*

---

[9] Section 1117(a) of the Lanham Act provides:

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the  principles of equity, to recover . . . defendant's profits . . . .   The court shall assess such profits . . . or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117 (alterations added).

*Corp. v. Mason*, 855 F.2d 779, 782 (11th Cir. 1988) ("[T]he district court [should] fashion the assessment of damages 'according to the circumstances of the case,' 15 U.S.C.A. [section] 1117, and it is the character of the conduct surrounding the infringement that is relevant." (alterations added; citation omitted)).  A plaintiff does not need to establish actual damages to obtain an accounting for profits.  *See Mason*, 855 F.2d at 781 ("An accounting for profits has been determined by this Court to further the congressional purpose by making infringement unprofitable, and is justified because it deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future." (citations omitted)).

The Eleventh Circuit has held that "an accounting of a defendant's profits is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct."  *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 902 (11th Cir. 2007) [hereinafter *Optimum II*] (citing *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990)).  Although "a showing of willful infringement or bad faith is grounds for recovering profits, such a showing of culpability is not a prerequisite to recovery, provided the plaintiff shows the defendant is 'purposely using the trademark,'" and at least one of the other two prongs for awarding profits (unjust enrichment or deterrence) is satisfied.  *Henkel*, 2006 WL 1663357, at *6 (quoting *Mason,* 855 F.2d at 781 ("Nor is an award of profits based on either unjust enrichment or deterrence dependent upon a higher showing of culpability on the part of defendant, who is purposely using the trademark.") (other citations omitted)).  Drew must demonstrate at least one of these factors for an award of profits against Fantasia to be appropriate.

*Willfulness*

The conduct underlying the infringement is willful "where the infringer was knowingly and deliberately cashing in upon the good will of [the infringed]." *Optimum II*, 217 F. App'x at 903 (alteration in original; internal quotation marks and citations omitted) (finding Home Depot's infringement was not willful where after notice defendant took steps to rectify outdated shelf tags and store receipts containing inaccurate product names, and there was no evidence of intent to cash in on plaintiff's good will)). Once a defendant is on notice of the alleged infringement, willfulness can be inferred from the defendant's deliberate conduct. *Cf. Weaver*, 169 F.3d at 1322 (upholding district court's finding that infringement resulting from unauthorized use of Burger King's marks was "willful and deliberate" where defendant had notice of the infringement after Burger King terminated defendant's franchise, thereby "justif[ying] the award of lost profits" (alteration added)).

Evidence whether a defendant acted in good or bad faith is relevant to assessing a defendant's intent to infringe and whether a defendant's conduct was willful. *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 175 (4th Cir. 2006) ("[A] lack of willfulness or bad faith should weigh against an award of damages being made, but does not necessarily preclude such an award.") (alteration added; footnote call number omitted). "Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search[,] or has relied on the advice of counsel." *Michael Caruso and Co., Inc. v. Estefan Enters., Inc.*, 994 F. Supp. 1454, 1462 (S.D. Fla. 1998) (alteration added; citation omitted) (explaining defendants presented evidence they consulted counsel, researched potential names and prior users, and selected the restaurant name, "Bongos Cuban Cafe," to refer to the

drums popular in Cuban music, not plaintiff's company, and noting such use had personal significance where owner's deceased pet was also named Bongos).

Still, acting in good faith upon advice of counsel does not necessarily preclude an accounting of profits. *See Wolfe v. National Lead Co.*, 272 F.2d 867, 871 (9th Cir. 1959) (rejecting defendant's good faith defense to an accounting of profits where defendant "had full knowledge of the facts and of [plaintiff's] claim of infringement[,]" and noting whether defendant, who was acting on advice of counsel, "believed himself to be within the law or not, he was knowingly and deliberately cashing in upon the good will of" plaintiff), *cited with approval in John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 977–78 (11th Cir. 1983) (explaining the finder of fact could infer from defendant's consultations with counsel that defendant "merely was attempting to come as close to [plaintiff's] mark as the law would allow . . . [and] that the only plausible explanation for such behavior was that defendant had intent to 'cash in' on plaintiff's good will" (alterations added; citations omitted)).

Drew cites several facts indicating Fantasia had prior knowledge of Drew's ACID mark before filing its application to register the mark SURFER ON ACID. (*See* Resp. 11). Fantasia's first exposure to Drew's ACID mark was at the June 2007 trade show. Before filing Fantasia's trademark application, Fantasia's attorneys conducted a trademark search for the SURFER ON ACID mark, which also revealed Drew's ACID mark. Even so, Fantasia proceeded with its use of the SURFER ON ACID mark. On March 24, 2011, Drew sent Fantasia a letter demanding Fantasia abandon its trademark application and terminate its use of the term "ACID" as a name or mark. Fantasia's counsel refused to do so, claiming there was no likelihood of confusion between Drew's and Fantasia's marks. The foregoing is evidence, albeit limited, from which one may infer Fantasia was acting in bad faith, knowingly and deliberately cashing in upon

12

Drew's good will, particularly after Drew expressly requested Fantasia abandon its use of the ACID mark.  *See, e.g., Optimum II*, 217 F. App'x at 903.

While Fantasia clearly had knowledge of Drew's prior mark, the question is whether Defendant's knowledge is sufficient to demonstrate willfulness.  To rebut the inference of bad faith, Fantasia argues it selected its mark for reasons wholly unrelated to Drew's ACID mark. (*See* Mot. 12–13).  In particular, testimony presented at the January 15 hearing suggests "Surfer on Acid" is a type of cocktail drink containing pineapple and coconut flavors.  (*See* Hr'g Tr. 19:2–21:19; Mot. 13).  Fantasia insists the product name SURFER ON ACID was chosen to convey the product's similarity in flavor to the cocktail drink, bearing the same name.  (*See* Reply 5).  Although the product's package depicts a blue-colored surfer rather than an image of the cocktail, Fantasia states this is not unique to the SURFER ON ACID mark.  (*See* Mot. 13; Hr'g Tr. 19:14–21:22).  Fantasia cites to at least three other product flavors — cupid's arrow, purple haze, and queen of hearts (*see* Hr'g Tr. 19:14–21:22) — that all refer to cocktail drinks and have packaging in which the principal graphic is a literal depiction of the name (and not an image of the corresponding cocktail drink) (*see* Mot. 13).

Even if Fantasia sufficiently demonstrates it did not intend to cash in on ACID's mark when selecting the SURFER ON ACID product name, Fantasia must still overcome the inference of willfulness that can be drawn from its decision not to comply with Drew's March 24, 2011 demand letter.  Fantasia was on notice of the alleged infringement after Drew's letter but did not cease using the ACID mark until a permanent injunction was entered against it.  Following the letter, willfulness may be inferred from Fantasia's deliberate conduct in continuing to use the mark SURFER ON ACID.  *See Weaver*, 169 F.3d at 1321–22; *John H. Harland Co.*, 711 F.2d at 978; *Wolfe*, 272 F.2d at 871.

As Drew has presented some evidence at this stage of the proceedings from which Fantasia's willful intent may be inferred, judgment for Fantasia is not warranted.

*Unjust Enrichment*

Fantasia argues Drew cannot demonstrate an award of profits is warranted under an unjust enrichment theory because Drew never presented any evidence of actual confusion between the parties' marks.  (*See* Mot. 11).  For its part Drew asserts evidence of actual confusion is not required to establish entitlement to profits on the basis of unjust enrichment. (*See* Resp. 15).

Unjust enrichment exists when an infringer has enriched itself "by tapping the reputation and good will of [the infringed]." *Optimum II*, 217 F. App'x at 903 (alteration in original) (quoting *Khimani*, 892 F.2d at 1521 n.9).  A defendant is unjustly enriched if its "sales were attributable to its alleged infringing use of the [plaintiff's] mark. . . . The burden is on the plaintiff to prove this connection by pointing to evidence of actual consumer confusion." *Optimum Techs., Inc. v. Home Depot USA, Inc.*, 78 U.S.P.Q. 2d 1801, at *3 (N.D. Ga. 2005) [hereinafter *Optimum I*] (alteration added) (citing *George Basch Co., Inc. v. Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992) ("[I]t follows that a profits award, premised upon a theory of unjust enrichment, requires a showing of actual consumer confusion — or at least proof of deceptive intent so as to raise the rebuttable presumption of consumer confusion.")) (other citations omitted).  In *Optimum II*, the court found no evidence Home Depot's sales were attributable to plaintiff's mark or that Home Depot improperly used plaintiff's mark to its financial advantage.  217 F. App'x at 903.  As plaintiff did not present any evidence of actual consumer confusion caused by the mislabeled shelf tags and receipts, it "failed to establish the causal link necessary to prove unjust enrichment." *Optimum I*, 78 U.S.P.Q. 2d 1801, at *3.

Drew's claim of unjust enrichment suffers from the same lack of evidence, as did plaintiff's claim in *Optimum II*, despite Drew's attempt to distinguish the facts in *Optimum II* from the present case.  Drew argues in *Optimum II* "the infringing use did not appear on the packaging of the product sold by the defendant, and that when the infringement was brought to the defendant's attention, it took steps to promptly correct the problem."  (Resp. 15–16). Regardless of whether it is the packaging or the labeling of a defendant's product that infringes upon another's mark, the relevant inquiry concerns the extent to which one user purposefully infringes the mark of another, resulting in customer confusion.  *See Optimum I*, 78 U.S.P.Q. 2d 1801, at *3; *Mason,* 855 F.2d at 781.   A defendant's prompt correction of the alleged infringement upon notice is certainly evidence of the defendant's intent that weighs against an award of profits under an unjust enrichment theory.  *See George Basch Co., Inc.*, 968 F.2d at 1538 (requiring actual consumer confusion or deceptive intent to find unjust enrichment); *see also Optimum I*, 78 U.S.P.Q. 2d 1801, at *3.  But as in *Optimum I* and *II*, Drew has not presented evidence of actual confusion, and consequently it has failed to establish the necessary causal link to show Fantasia improperly used Drew's ACID mark to its financial advantage.

Relying on *Mason*, Drew mistakenly concludes a showing of actual confusion is not required because "a plaintiff need not demonstrate actual damage to obtain an award reflecting an infringer's profits."  (Resp. 16 (quoting *Mason*, 855 F.2d at 781 (citing *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487–88 (11th Cir. 1987))).  The underlying case, *Wesco*, however, stands for the proposition that a plaintiff need not demonstrate it sustained any damages as a result of the infringement to obtain an accounting of profits of an infringer's products; rather, a plaintiff must prove the defendant's sales.  *See* 833 F.2d at 1487–88; *cf. Maltina Corp. v. Cawy Bottling Co., Inc.*, 613, F.2d 582, 585 (5th Cir. 1980) (concluding

a diversion of sales from the plaintiff was not a prerequisite to an award of profits where the plaintiff "never sold any appreciable amount[,]" but finding the defendant willfully infringed on plaintiff's mark and was unjustly enriched).   Under an unjust enrichment theory, Drew must show evidence Fantasia enriched itself by tapping into Drew's reputation and good will.  *See Optimum II*, 217 F. App'x at 903.

Drew admits it was not unexpected there would be no evidence of actual confusion because SURFER ON ACID was not separately advertised or promoted, and Fantasia's sales were minimal until December 2010.  (*See* Resp. 16).  As Drew has not presented any evidence of actual customer confusion, a profits award cannot be predicated upon a theory of unjust enrichment.

*Deterrence*

Last, Drew contends Fantasia's infringing conduct demonstrates the need for deterrence. (*See* Resp. 17).  Fantasia insists its abandonment of a handful of other marks is hardly probative of a propensity to infringe that requires deterrence.  (*See* Reply 10).

Where a preliminary injunction is insufficient to deter future infringement, an award of profits may be warranted to ensure deterrence.  *See Khimani*, 892 F.2d at 1514–16.  In *Khimani*, a preliminary injunction failed to appropriately deter the defendants from continuing to infringe on the plaintiff's Howard Johnson hotel and restaurant franchise.   *See id.* at 1515, 1518 (explaining defendants intended to adopt a new name after the preliminary injunction that "would be close to Howard Johnson's name, yet . . . not infringe" and so selected the name, "H.J. Inns").  Deterrence was also warranted as the "defendants' efforts at compliance were dilatory and grudging[,]" and substantial compliance was not achieved until the eve of a contempt hearing.  *Id.* at 1514.

Although a profits award for the purpose of deterrence is not "dependent upon a higher showing of culpability on the part of [the] defendant," the defendant must have purposely used the trademark. *Mason*, 855 F.2d at 781 (alteration added). Accordingly, the facts of a case are often such that an award of profits is considered to be an appropriate remedy where it is based on more than one factor indicating the defendant's liability. *See Weaver*, 169 F.3d at 1322 (upholding the award of profits based on the district court's findings regarding the need "to deter other Burger King® franchisees from unauthorized use of BKC's marks after termination of their franchise" and/or "the deliberate and willful nature of the infringement"); *Mason*, 855 F.2d at 781 (noting an accounting of profits "deprives the defendant of unjust enrichment and provides a deterrent to similar activity in the future" (citations omitted)); *Mystique, Inc. v. 138 Int'l, Inc.*, No. 07-22937-Civ, 2009 WL 2357029, at *7 (S.D. Fla. July 30, 2009) (concluding an award of profits was justified upon findings of deliberate and willful infringement, unjust enrichment, and deterrence (citations omitted)).

In the present case, Fantasia timely complied with the July 6, 2012 permanent injunction. Fantasia took steps to avoid diluting or infringing Drew's ACID mark, including ceasing sales of SURFER ON ACID and relabeling and repackaging its product with the new name, SURFER. (*See* Bahbah Aff. 2 [ECF No. 183]). *See also Faberge, Inc. v. Saxony Prods., Inc.*, 605 F.2d 426, 429, 429 n.1 (9th Cir. 1979) (noting an award of profits may be inappropriate where defendant "had suffered enough in the costs of litigation and of modifying the packaging of its product to deter further infringement.").

Despite the permanent injunction regarding use of the ACID mark, Drew insists a profits award against Fantasia is necessary to deter Fantasia from infringing on other protected marks in the future. (*See* Resp. 17). Drew cites the two other occasions when Fantasia used others'

protected marks without a license as evidence of the need to deter misconduct.  (*See* Hr'g Tr. 21:23–25:11, 29:18–22).  A defendant's abandonment of marks after other trademark holders object may or may not show the need for deterrence.  While it may be evidence of a pattern, it may also be indicative of a party's willingness to cooperate rather than infringe.  Without additional explanation, the Court cannot say which of the two it is.

### V.   CONCLUSION

On this record the Court is not prepared to enter a judgment on partial findings in favor of Fantasia.  Nevertheless, and to guide Drew's decision whether to proceed with its request for a profits award, the Court has provided certain observations regarding the strength of the evidence regarding Fantasia's willfulness, the absence of evidence supporting a finding of unjust enrichment, and the questionable need of a profits award to deter future misconduct by Fantasia. For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendant Fantasia's Motion for Entry of Judgment . . . **[ECF No. 276]** is **DENIED**.  By no later than April 7, 2014 the parties shall file a joint status report advising how they wish to proceed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of April, 2014.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record